UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WANDA I. ESTRELLA-MARTINEZ,

                              Plaintiff,

                      v.

ANDREW SAUL,
Commissioner of Social Security,

                              Defendant.
_____

DECISION AND ORDER

19-CV-6606L

       Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

       On August 20, 2015, plaintiff, then thirty-six years old, filed an application for disability insurance benefits, alleging an inability to work since September 20, 2014. (Administrative Transcript, Dkt. #7-2 at 16). Her application was initially denied. Plaintiff requested a hearing, which was held via videoconference before Administrative Law Judge ("ALJ") Dina R. Loewy. The ALJ issued an unfavorable decision on September 6, 2018. (Dkt. #7-2 at 16-26). That decision became the final decision of the Commissioner when the Appeals Council denied review on June 17, 2019. (Dkt. #7-2 at 1-3). Plaintiff now appeals.

       The plaintiff has moved for remand of the matter for further proceedings (Dkt. #9), and the Commissioner has cross moved (Dkt. #12) for judgment on the pleadings, pursuant to

Fed. R. Civ. Proc. 12(c).  For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.  *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, primarily comprised of mental health treatment records for bipolar disorder, obsessive compulsive disorder, and anxiety disorder, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment.  (Dkt. #7-2 at 18).

The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels, with the following limitations: can never climb ladders, ropes, or scaffolds; must avoid all exposure to hazardous machinery, unprotected heights, and operational control of moving machinery; limited to simple, routine, and repetitive tasks at SVP 1 or 2, with no conveyor belt work; limited to low stress jobs, defined as having only occasional decision making and occasional changes in the work setting; is precluded from fast paced production requirements, such as having to produce 50 widgets a day; can have no interaction with the public, and can have only occasional interaction with coworkers or supervisors.  (Dkt. #7-2 at 20).

Because plaintiff was limited to unskilled work, the ALJ found that she could not return to her past relevant work as a licensed practical nurse and child monitor, which are skilled and/or

semi-skilled positions. The ALJ thus turned to testimony by vocational expert David A. Festa to determine whether there were other jobs in the economy that plaintiff could perform. When given the ALJ's RFC finding as a hypothetical question, Mr. Festa testified that such an individual could perform the representative light unskilled positions of office helper, order caller and shipping and receiving weigher. (Dkt. #7-2 at 24).

### I.      Plaintiff's Exertional Limitations: Hand Tremors

Initially, plaintiff argues that the ALJ failed to properly assess or account for her anxiety-related hand tremors in formulating plaintiff's RFC. Plaintiff testified at her hearing that she suffers from hand tremors which prevent her from holding or carrying anything whatsoever, from pieces of paper to heavy laundry baskets. (Dkt. #7-2 at 40, 44, 52).

The ALJ noted that although a few examination records noted hand tremors on occasions when plaintiff presented with severe anxiety (e.g., Dkt. #7-2 at 19; Dkt. #7-7 at 582; Dkt. #8-2 at 1436, 1574, 1577), most examination records did not refer to tremors, or else noted that plaintiff's motor skills were intact. Nonetheless, the ALJ explicitly noted that she was "giving the claimant the benefit of the doubt," and incorporated into her RFC finding "limitations related to her alleged hand shaking including never climbing ladders, ropes [or] scaffolds, and avoiding all hazards such as operational control of moving machinery." (Dkt. #7-2 at 19).

Plaintiff alleges that the ALJ erred in declining to incorporate additional lifting and handling limitations into her RFC finding, and argues that the ALJ's analysis incorrectly referred to a lack of consistent examination findings of hand tremors, which, plaintiff argues, is not evidence that her description of her tremors was exaggerated, but rather testifies only to the episodic, waxing-and-waning nature of her mental disorders and their accompanying physical manifestations.

3

Although plaintiff contends that her hand tremors are sufficiently frequent or severe to necessitate additional RFC limitations related to lifting, carrying and/or handling, the Court notes that ultimately, the plaintiff bears "the burden of proving her RFC." *Bozzuto v. Colvin*, 2018 U.S. Dist. LEXIS 15379 at *46 (D. Conn. 2018) (quoting *Kallfelz v. Commissioner*, 2017 U.S. Dist. LEXIS 48859 at *4 (D. Conn. 2017)). "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of . . . limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted). "The court will not second-guess the ALJ's decision where [s]he identified the reasons for h[er] RFC determination and supported h[er] decision with substantial evidence." *Kallfelz*, 2017 U.S. Dist. LEXIS 48859 at *5.

Here, the ALJ did not wholly reject plaintiff's testimony: she explicitly accepted that plaintiff suffers from hand tremors, cited the evidence of record referring to hand tremors (including records where hand tremors were noted, and where they were not), and incorporated logically appropriate limitations into her RFC finding. While plaintiff claims that additional limitations in carrying and handling were supported by the record, I do not find that the ALJ's decision not to fully credit plaintiff's testimony (which appeared to describe tremors that were significantly more debilitating than the record otherwise suggested) was erroneous. Indeed, while the record contains scant objective evidence of plaintiff's motor coordination and strength, assessments by plaintiff's treating neurologist Dr. Shirley J. Cirillo found normal muscle bulk and tone, full strength, and normal sensation and coordination, both when "marked tremors" were present due to anxiety (Dkt. #7-7 at 582), and when they were absent, and to the extent that Dr.

4

Cirillo identified specific work-related limitations caused by plaintiff's neurological symptoms (e.g., no heavy machinery), the ALJ included all of them in her RFC finding. (Dkt. #7-7 at 562, 569-70, 576).

In short, the ALJ's RFC finding was supported by substantial evidence, and the record does not establish the need for tremor-related limitations beyond those adopted by the ALJ.

**II.     Opinion By Other Treating Source Jenna Simpson, LMSW**

Plaintiff also alleges that the ALJ erred when she declined to grant more than "limited" weight to the opinion of plaintiff's treating therapist, Jenna Simpson, LMSW. (Dkt. #7-2 at 23).

As an initial matter, by virtue of her status as a social worker, Ms. Simpson's opinion is not entitled to controlling weight. *See Meyers v. Commissioner*, 2020 U.S. Dist. LEXIS 32843 at *13 (W.D.N.Y. 2020); *Coleman v. Commissioner*, 335 F. Supp. 3d 389, 398 (W.D.N.Y. 2018). Social workers are not "acceptable medical sources" for purposes of the applicable Social Security Regulations, but rather are "other medical sources," whose opinions may be considered as to the severity of a plaintiff's impairment and ability to work, but whose conclusions are not entitled to any special weight. 20 C.F.R. § 416.902. *See May v. Colvin*, 2014 U.S. Dist. LEXIS 94368 at *17 (W.D.N.Y. 2014) (noting that "[t]he ALJ has discretion to determine appropriate weight to accord opinions of other medical sources," and finding that the ALJ's rejection of a social worker's opinion on the grounds that it reflected a short course of treatment and was inconsistent with other evidence of record, including the opinion of a consultative examiner, was appropriate).

Nonetheless, where, as here, the record does not contain medical opinions from an acceptable medical source such as a treating physician or psychiatrist concerning a severe impairment, the opinions of consulting and examining physicians, as well as non-acceptable medical sources such as therapists, can "take on particular significance." *Montanez v. Berryhill*,

5

334 F. Supp. 3d 562, 564 (W.D.N.Y. 2018).  In considering such opinions, the ALJ should apply the same factors typically used to weigh the opinions of treating physicians, including: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the source's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist.  Further, the ALJ must articulate his or her reasons for assigning the weight that the ALJ does accord to the medical opinions of record.  *Id.*

Ms. Simpson opined on February 27, 2018, based on regular treatment sessions beginning October 6, 2016, that plaintiff suffered from bipolar disorder, generalized anxiety disorder, panic attacks, obsessive compulsive disorder, and psychophysiological insomnia.  (Dkt. #8-1 at 1347-50).  She opined that plaintiff's symptoms would cause moderate limitations in following, understanding, and remembering simple directions, performing simple and complex tasks independently, and maintaining basic standards of hygiene and grooming.  She further opined that plaintiff would be "very limited" (defined as unable to function 25% or more of the time) with respect to maintaining attention and concentration for rote tasks, attending to a routine and maintaining a schedule, and performing low stress and simple tasks.  Ms. Simpson stated that plaintiff lacked the capacity to use public transportation, and would be unable to participate in any activities other than treatment or rehabilitation, for at least 12 months.  Six months later on June 1, 2018, however Ms. Simpson declined to render an updated opinion, emphasizing that "[w]e are unable to respond to your [RFC] questionnaire in detail as we do not focus on specific work readiness and assessing the client's employability."  (Dkt. #8-1 at 162).

With respect to Ms. Simpson's initial assessment, the ALJ acknowledged Ms. Simpson's status as a treating social worker, but afforded her opinion only "limited" weight, noting that it

was inconsistent with the "mild" examination evidence. That evidence, as summarized by the ALJ, included plaintiff's consistently "normal mental status evaluations" from Bronx Care Adult Outpatient Care and New York Psychotherapy and Counseling, mental status examinations and therapy notes indicating that plaintiff's symptoms were well-controlled with medication and that her mental status was grossly normal (Dkt. #7-7 at 406-453, 461-557), and generally benign mental status examinations with Rochester Regional Health. When examined by consulting psychologist Dr. Arlene Broska on October 23, 2015 (whose opinion the ALJ gave "significant" weight), plaintiff was noted to be cooperative, with coherent thinking, a full range of affect, neutral mood, and intact attention and concentration. (Dkt. #7-7 at 455-58). Plaintiff's grooming and hygiene were consistently noted to be normal.

The ALJ's characterization of Ms. Simpson's opinion, and her finding that it was generally inconsistent with the record, was not factually incorrect, and plaintiff points to no evidence concerning her mental impairments that the ALJ overlooked or misconstrued. Furthermore, Ms. Simpson's opinion was not explained by any description of plaintiff's symptoms, narrative explanation, or treatment notes, and she declined a subsequent request to provide a more specific opinion concerning plaintiff's ability to perform work-related functions.

In summary, I find that the weight given by the ALJ to the medical opinions of record was appropriate and sufficiently explained, and that the ALJ's decision is supported by substantial evidence, and is not the product of legal or factual error.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #9) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #12) is granted.  The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       April 28, 2020.